J-S62011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.U., A MINOR | : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.U., FATHER | : | No. 888 MDA 2017 |

Appeal from the Order Entered May 4, 2017
In the Court of Common Pleas of Lancaster County
Juvenile Division at No: CP-36-DP-0000083-2017

BEFORE: STABILE, MOULTON, and STRASSBURGER,* JJ.

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 29, 2017**

R.U. ("Father") appeals from the order entered May 4, 2017, in the Court of Common Pleas of Lancaster County, which adjudicated dependent his minor son, S.U. ("Child"), born in November 2008. The order also maintained Child's placement in foster care, set his permanency goal as adoption, and terminated visitation. In addition, Father appeals from the separate order entered that same day, which found aggravated circumstances and directed that no efforts should be made to reunify Child with Father. After careful review, we vacate and remand for further proceedings.

We summarize the relevant factual and procedural history of this matter as follows. On April 12, 2017, the Lancaster County Children and Youth Social Service Agency ("the Agency") filed a petition for temporary custody of Child, as well as a dependency petition. In its dependency petition, the Agency

_____

* Retired Senior Judge assigned to the Superior Court.

averred that Father and K.U. ("Mother") (collectively, "Parents") have a lengthy prior history with the Agency. Dependency Petition, 4/12/17 (Allegations of Dependency), at ¶ F. Specifically, the Agency averred that two of Parents' younger sons, J.U.1 and J.U.2, were already dependent. *Id.* Parents relinquished their parental rights to J.U.1 voluntarily on May 18, 2016, while their parental rights to J.U.2 were terminated involuntarily on March 28, 2017. *Id.*

The Agency further averred that it received a referral regarding Child on March 27, 2017, alleging that Child suffered from poor hygiene, and that Mother engaged in substance abuse. *Id.* at. ¶ A. After conducting an investigation, the Agency discovered that Child was living with Parents in a one-bedroom apartment "with a mattress that the family shares." *Id.* at ¶ D. Both Parents agreed to submit to drug screens. *Id.* at ¶ D-E. While Father testified negative, Mother tested positive for THC and cocaine. *Id.*

As a result of the Agency's allegations, The Honorable Jay J. Hoberg entered an order granting the petition for temporary custody, and placed Child in foster care. The order also appointed separate counsel to represent each Parent. On April 18, 2017, Judge Hoberg conducted a shelter care hearing.[1] Because Parents failed to attend the hearing, Judge Hoberg permitted counsel to withdraw. Judge Hoberg entered a shelter care order on May 1, 2017.

The Honorable Thomas B. Sponaugle conducted a dependency hearing the following day, on May 2, 2017. Parents did not attend the dependency

---

[1] The shelter care hearing was continued from April 13, 2017.

hearing, and remained unrepresented. On May 4, 2017, Judge Sponaugle entered an order adjudicating Child dependent, maintaining his placement in foster care, setting his permanency goal as adoption, and terminating visitation.[2] Judge Sponaugle entered an additional order that same day, finding aggravated circumstances due to the involuntarily termination of Parents' parental rights to J.U.2., and directing that no efforts should be made to reunify the family. Father obtained court-appointed counsel following the hearing, and timely filed a notice of appeal on June 1, 2017, along with a concise statement of errors complained of on appeal.[3]

Father now raises the following issues for our review.

I. Whether the Court erred in concluding that the evidence clearly and convincingly established that the child is a dependent child pursuant to the Pennsylvania Juvenile Act at 42 Pa.C.S.[A. ]§[]6302?

II. Whether the Court erred in concluding that it is in the best interest of the child to be removed from the home of Mother and Father?

III. Whether the Court erred in entering an Aggravated Circumstances Order against Father and concluding that no efforts should be made to preserve the family and reunify the child with Father because his parental rights had been involuntarily terminated with respect to another child?

_____

[2] The order set a concurrent goal of placement with a permanent legal custodian.

[3] Mother also obtained court-appointed counsel following the hearing. Mother did not file an appeal, although she did file a brief in this Court supporting Father's appeal.

IV. Whether the Court erred in terminating visitation for Father?

V. Whether Father should be granted another hearing to determine whether he should be granted visitation of the child and whether he should be given a Child Permanency Plan with the goal of reunification with the child[?]

Father's Brief at 4 (suggested answers omitted).[4]

We review the trial court's orders pursuant to an abuse of discretion standard of review. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). As such, we must accept the court's findings of fact and credibility determinations if they are supported by the record, but we need not accept the court's inferences or conclusions of law. *Id.*

At the outset, we must address Father's lack of counsel during the May 2, 2017 dependency hearing.[5] Dependency proceedings are governed by the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6375. Section 6337 of the Juvenile Act provides that a parent is entitled to counsel at all stages of any such proceedings. If a parent appears at a hearing unrepresented, the trial court must ascertain whether that parent is aware of his or her right to counsel. The court must also ascertain whether that parent is aware that the court will provide counsel for him or her if the parent is unable to afford private counsel.

_____

[4] We have renumbered the pages of Father's brief, starting at the table of contents, for ease of reference. This change is necessary because the page numbers in Father's brief jump from one to ten with no two through nine in between, and because the numbers are placed in inappropriate locations, often even in the middle of the page.

[5] Although Father did not raise this issue in his brief, we address it in light the important rights at stake. *See In re X.J.*, 105 A.3d 1, 4 (Pa. Super. 2014) (addressing the appellant Mother's lack of counsel *sua sponte* in a termination of parental rights case).

- 4 -

Except as provided under this section and in section 6311 (relating to guardian ad litem for child in court proceedings), a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him. If a party other than a child appears at a hearing without counsel the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if applicable. The court may continue the proceeding to enable a party to obtain counsel. Except as provided under section 6337.1 (relating to right to counsel for children in dependency and delinquency proceedings), counsel must be provided for a child. If the interests of two or more parties may conflict, separate counsel shall be provided for each of them.

42 Pa.C.S.A. § 6337.

Our Rules of Juvenile Court Procedure impose similar requirements.

Rule 1151(E) provides that a trial court must inform an unrepresented parent

of his or her right to counsel prior to any dependency proceeding.

**E. Counsel for other parties.** If counsel does not enter an appearance for a party, the court shall inform the party of the right to counsel prior to any proceeding. If counsel is requested by a party in any case, the court shall assign counsel for the party if the party is without financial resources or otherwise unable to employ counsel. Counsel shall be appointed prior to the first court proceeding.

Pa.R.J.C.P. 1151(E).

The comment to Rule 1151 provides further guidance.

Pursuant to paragraph (E), the court is to inform all parties of the right to counsel if they appear at a hearing without counsel. If a party is without financial resources or otherwise unable to employ counsel, the court is to appoint counsel prior to the proceeding. Because of the nature of the proceedings, it is extremely important that every "guardian" has an attorney. Therefore, the court is to encourage the child's guardian to obtain counsel.

> Pursuant to Rule 1120, a guardian is any parent, custodian, or other person who has legal custody of a child, or person designated by the court to be a temporary guardian for purposes of a proceeding. *See* Pa.R.J.C.P. 1120.

Pa.R.J.C.P. 1151, Comment.

Finally, Rule 1152 provides that a parent may only waive his or her right to counsel if the trial court conducts an on-the-record colloquy.

> **A. Children.**
>
> (1) *Guardian ad litem*. A child may not waive the right to a guardian *ad litem*.
>
> (2) *Legal Counsel*. A child may waive legal counsel if:
>
>> (a) the waiver is knowingly, intelligently, and voluntarily made; and
>>
>> (b) the court conducts a colloquy with the child on the record.
>
> **B. Other parties.** Except as provided in paragraph (A), a party may waive the right to counsel if:
>
> (1) the waiver is knowingly, intelligently, and voluntarily made; and
>
> (2) the court conducts a colloquy with the party on the record.
>
> **C. Stand-by counsel.** The court may assign stand-by counsel if a party waives counsel at any proceeding or stage of a proceeding.
>
> **D. Notice and revocation of waiver.** If a party waives counsel for any proceeding, the waiver only applies to that proceeding, and the party may revoke the waiver of counsel at any time. At any subsequent proceeding, the party shall be informed of the right to counsel.

Pa.R.J.C.P. 1152.[6]

Applying these provisions to the instant matter, it is clear that Father was entitled to counsel during the May 2, 2017 dependency hearing. Because Father was unrepresented at the time of the hearing, the trial court had an affirmative obligation to ascertain whether he was aware of his right to counsel, and whether he was aware that the court would provide counsel for him if he could not afford counsel on his own.

After careful review, we conclude that trial court failed to satisfy this affirmative obligation. Despite the mandatory language of Section 6337, the record reveals that the court made no effort to ascertain whether Father was aware of his right to counsel during the dependency hearing. In fact, the court did not acknowledge Father's lack of counsel at all. Only counsel for the Agency mentioned this issue, and she did so in passing. *See* N.T., 3/2/17, at 3 ("The parents are not present. They are not represented by counsel as counsel had withdrawn at the time of the shelter care hearing.").[7] While it is true that Father failed to appear at the hearing, this did not relieve the court

_____

[6] The comment to Rule 1152 provides a list of questions that trial courts should ask to ascertain whether a parent's waiver of counsel is knowing, intelligent, and voluntary. *See* Pa.R.J.C.P. 1152, Comment.

[7] The transcript of the hearing indicates that this statement was made by Child's guardian *ad litem*, Jeffrey Gonick, Esquire. However, in context, it appears likely that the statements were actually made by counsel for the Agency, Laura McGarry, Esquire. *See*, N.T., 5/2/17, at 3 (the same speaker stating, "[t]he guardian ad litem, Jeffrey Gonick, is present. . . . The Agency is prepared to present testimony regarding the adjudication/disposition").

of its affirmative obligation. If anything, Father's absence gave the court all the more reason to ensure that his rights were protected.

Moreover, while the record indicates that Father received prior written notice of his right to counsel, including instructions on how to obtain counsel, prior written notice cannot satisfy the requirements of the Juvenile Act. Pursuant to Section 6337, the trial court still had an obligation to ascertain whether Father read and understood the notice. Even if Father did read and understand the notice, Rule 1152 confirms that he could not waive his right to counsel absent a colloquy on the record, establishing that his waiver was knowingly, intelligently, and voluntarily made. No such colloquy took place here.

Thus, we conclude that the trial court abused its discretion by adjudicating Child dependent, terminating visitation between Child and Father, and by finding aggravated circumstances. We therefore vacate the court's orders and remand this matter for the court to conduct a new dependency hearing. In the event Father is unrepresented at the time of the hearing, the court must ascertain whether he has been advised of his rights.[8]

Orders vacated. Case remanded or further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judge Moulton joins this memorandum.

---

[8] Based on our disposition, we need not address the issues presented in Father's brief.

Judge Strassburger files a dissenting memorandum.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/29/17